THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TONY WATSON, Defendant-Appellant.

First District (5th Division)   No. 86—1924

Opinion filed October 30, 1987.

Steven Clark and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Michael Boyce, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

On appeal from his bench-trial conviction for bribery, defendant Tony Watson contends: (1) trial counsel was ineffective in failing to move to dismiss an invalid information; (2) the trial court considered

material which was not introduced into evidence; (3) the State did not establish defendant's guilt beyond a reasonable doubt.

We affirm.

The pertinent trial testimony was as follows. Chicago police officer Daniel Lukensmeyer testified that on April 21, 1985, at about 10:20 p.m., he responded to a report of a disturbance at 5101 South Union in Chicago. At that location four men, including the defendant, were screaming obscenities in front of a tavern. Lukensmeyer and his partner, Officer Ronald Condreva, both in uniform, approached the men and conducted protective searches of all of them. Because of material (undisclosed in testimony) found on the defendant, he was arrested, handcuffed, and placed in the backseat of the officers' squad car.

Lukensmeyer testified that as they were driving to the police station defendant asked them to take him to his mother's house where, he said, he would give them $500 to release him. The officers refused. Defendant then asked them to pull over, offering to give them all the money out of his pocket to let him go. He told them he feared this arrest because he was on probation for a drug conviction. Lukensmeyer directed his partner to pull into a bank parking lot at 3558 South Wallace, located about one-half block from the police station. Both officers got out of the car. Lukensmeyer told defendant that he, Lukensmeyer, could not take the money out of his pocket. They took defendant out of the car and uncuffed one hand. Defendant reached into his shirt pocket and took out a sum of United States currency, giving it to Lukensmeyer. The officers subsequently counted the money in the squad car, finding $51. After receiving the money they handcuffed the defendant again, placed him in the car, and told him he was under arrest for bribery. On cross-examination Lukensmeyer testified that the bank lot was dark. He recalled that defendant was wearing Levi's and a shirt but could not remember anything else about his clothing.

Officer Condreva testified to substantially the same facts. However, his account differed in some details. He did not recall Lukensmeyer telling him to pull into the bank lot, instead recalling that defendant repeatedly asked them to pull over. He believed that the lot was well lighted, and he recalled that defendant was wearing a jacket over his shirt. Condreva also testified that the lot was about a block and a half from the police station.

Defendant testified that at the time in question he was on probation for possession of cocaine. He was standing on the street with a group of men when the two officers approached and asked if they had

seen someone named Pee-Wee. They then searched defendant and the others, handcuffed the defendant, and placed him in the squad car. Before they drove off with him, one of the officers reached into his shirt pocket and took the $51 contained there, asking him how much money he had. He was then driven to the station without any stops being made. At the station an assistant State's Attorney was summoned to question him. He said no to everything the attorney asked him. At trial defendant denied having offered the officers any money.

Defendant presented three witnesses in corroboration of his account. Darryl Matthews testified that he was one of those on the corner with defendant, whom he knew from playing basketball. After the officers handcuffed the defendant and placed him in the backseat, Matthews saw one of them pull money out of defendant's pocket. Danny Ross, who was also standing with defendant, saw the police place defendant in the car. He then stepped into the tavern but emerged in time to see the police get back into the car and pull off. He testified that this was all he saw. Maureen Ross testified that she emerged from the tavern in time to see defendant handcuffed and placed in the back of the car. On direct examination she testified that she then saw one of the officers reach into defendant's pocket and take out money. However, on cross-examination she admitted that she did not know what the police had taken out of the pocket.

In rebuttal the State presented the testimony of David King, the assistant State's Attorney who had interviewed the defendant after his arrest. King testified that defendant told him that on the way to the station the police pulled over to a curb and took $51 out of his pocket. On cross-examination King testified that he asked defendant to sign a document concerning what he had said, but defendant refused after reading it.

On surrebuttal defendant denied making the statement attributed to him by King. However, he did admit that King read to him what purported to be his statement about police officers pulling over and taking money from his pocket. Defendant testified that he told King he would not make any statement and would not sign anything.

OPINION

I

■ We find no merit to defendant's contention that the information charging him with bribery was void and should have been challenged by his trial counsel. That information alleged that defendant had committed the offense of bribery by offering the officers "a sum

of USC." Clearly this terminology would enable a person of common understanding to know what the charging instrument intended, that defendant was alleged to have offered the officers a sum of United States currency, and, therefore, the information was valid. (*People v. Phelan* (1981), 99 Ill. App. 3d 925, 426 N.E.2d 925.) Those cases cited by counsel, such as *People v. Allen* (1972), 8 Ill. App. 3d 176, 289 N.E.2d 467, in which offenses were charged only by reference to initials of the offense, are clearly inapposite. Here, defendant was specifically informed that he was charged with bribing two police officers in order to avoid arrest. Accordingly, we find no basis for reversal on this ground.

## II

■ We also find no merit to defendant's contention that the trial court improperly considered material not introduced into evidence. As we have noted, Assistant State's Attorney King testified that defendant orally gave him an account of the events in question which, although exculpatory in itself, contradicted the defendant's trial account of what had occurred. In that statement defendant said the police took the money from him on the way to the station, pulling over to do so. At trial defendant contended that the money was taken from him immediately after he was arrested and placed in the squad car. King also testified that defendant refused to sign a written version of his statement. Defendant subsequently denied making the statement but did state that King attempted to have him sign such a statement.

The written statement was never introduced into evidence. In finding against defendant on the issue of credibility, the court noted that this statement, which it specifically found was made, contradicted defendant's trial version of what occurred. The court noted that Assistant State's Attorney King had testified that the statement was made and also noted that the statement was "recorded in the writings of [King]." Defendant seizes on this last statement as evidence that the court was relying on that written statement, which was not introduced into evidence. But at trial defendant himself admitted that this written statement existed; he merely denied that he made it or signed it. The court chose to believe the assistant State's Attorney, and we find no basis for disturbing that credibility determination.

## III

■ Defendant's final contention is that his guilt was not established beyond a reasonable doubt. Defendant cites certain alleged in-

consistencies in the testimony of the two arresting officers. He asserts that they differed on the clothing worn by the defendant. But, in fact, one officer only stated that he could not recall what defendant was wearing, beyond a shirt and Levi's, while the other officer specifically recalled that defendant was also wearing a jacket. Both officers agreed that defendant took the money out of his shirt pocket. Defendant also notes that the officers differed on the distance from the parking lot to the police station and on the lighting at the parking lot. These were minor discrepancies. There was no question as to defendant's identity and therefore the lighting at the parking lot was unimportant, as was the lot's exact distance from the police station.

Defendant also asserts that it is incredible and contrary to human experience to believe that a defendant would first offer a $500 bribe and then reduce it to $51, citing *People v. Gokey* (1974), 57 Ill. 2d 433, 312 N.E.2d 637. In *Gokey* the defendant, in the presence of five law enforcement officers, offered escalating amounts from $50 to $7,200 not to be locked up. These offers were not reported in a subsequent report prepared by the deputy sheriff who witnessed them. Under all of these circumstances the court found that the defendant was not seriously proposing criminal conduct and instead may have been expressing anger or bravado. In this cause the State presented evidence that the defendant made a concrete offer and then followed through by giving money to the officers after they let him out of their squad car. All of these matters merely presented the trial court with a question of credibility. In this regard it should be noted that of the three eyewitnesses presented by defendant, only one unequivocally stated that the officers took money from him at the scene of his arrest. A second witness could not identify what was taken, and the third witness did not see any such transaction. It is not our function to reweigh the credibility of witnesses and, accordingly, we will not disturb the trial court's determination that the State's witnesses were to be believed in the circumstances of this case. *People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.

For the reasons set forth in this opinion the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P.J., and MURRAY, J., concur.